IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| THOMAS J. ALLISON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-3040-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| LINDA S. McMAHON[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

     Arthur W. Stevens, III
     Black, Chapman, Webber, Stevens,
        Petersen & Lundblade
     221 Stewart Avenue, Suite 209
     Medford, Oregon  97501

        Attorney for Plaintiff

---

[1]On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Joanne E. Dantonio
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Thomas Allison brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand the action for rehearing.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

Page 3 - OPINION AND ORDER

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

Page 4 - OPINION AND ORDER

## THE ALJ'S DECISION

The ALJ found that Allison had severe impairments from multiple injuries to his left knee with an osteochondral defect status post arthroscopic surgery (January 21, 2002), comminuted tibial plateau fracture status post open reduction internal fixation (June 14, 2003), and additional arthroscopy and hardware removal in August 2005.  However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  The ALJ did not find Allison's subjective symptom testimony credible and did not accept the opinion of a treating physician that Allison was limited to nonrepetitive work for his left hand.  The ALJ found that Allison had the residual functional capacity to lift and carry up to 10 pounds frequently and 20 pounds occasionally; walk/stand two hours of an eight hour day; sit for six hours of an eight hour day; rarely crouch, crawl, kneel, or climb ladders/scaffolds; and occasionally climb stairs and ramps.  Based on vocational expert testimony, the ALJ concluded that Allison could perform the full range of light work, including the jobs of table worker, small products assembler, ticketer, addresser, sedentary assembler, and sedentary table worker, and was thus not disabled under the Act.

## FACTS

Allison, who was 35 years old at the time of the ALJ's decision, has a high school education and work experience as a press operator, forklift operator, construction laborer, and grader.  Allison alleges that he has been disabled since June 14, 2002 due to the injuries to his left leg and left hand.  He lives with his wife and children.  Allison is no longer able to play much

with his children and has given up hobbies of working on cars, woodworking, fishing, and bicycling.

Allison had arthroscopic surgery on his left knee in 2002. Six months later, his knee collapsed as he was walking down stairs. He broke his leg, requiring surgery to pin his leg in six places. He never completely recovered and had a third surgery to remove the pins. Again, Allison never fully recovered. He complains of pain in the leg and a severe limp. In October 2003, Allison could only walk with support such as a brace or crutches and even then he could only walk 50 yards before resting. At the time of the hearing, a month had passed since the third surgery. Allison still had to elevate and ice his leg every day to reduce the swelling and pain.

In October 1999, Allison's left hand was punctured with a piece of wood which was not fully removed from his hand. The wound became infected, requiring surgery. He complains of continuing cramping and pain in his hand.

## DISCUSSION

I.    Physician's Opinions

Although Allison's leg injury was the only impairment discussed at the hearing, the issue on this appeal concerns his hand injury. Allison contends that the ALJ erred concerning his left hand impairment by giving the opinion of Dr. Bury more weight than the opinions of examining orthopedic surgeons Dr. Corson and Dr. Smith and treating hand specialist Dr. Young. Allison argues that their opinions compel the conclusion that he could not perform repetitive work.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician

because the person has a greater opportunity to know and observe the patient as an individual.

Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's

opinion is not contradicted by another physician, the ALJ may only reject it for clear and

convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the

opinion without providing specific and legitimate reasons supported by substantial evidence in

the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is

insufficient to constitute substantial evidence to reject the opinion of a treating or examining

physician. Id. at 831.

On May 25, 2000, Allison's left hand was examined by two orthopedic surgeons, Dr.

Smith and Dr. Corson, and a neurologist, Dr. Rich, because of continuing problems after his

October 2000 puncture wound. The examination was done as part of Allison's workers'

compensation claim. The doctors noted:

> This patient does have some impairment in his ability to repetitively use
> the left hand for gripping because of the aforementioned scarring in the flexor
> tendon sheaths from the deep infection in the hand. This would definitely affect
> this man's work if he were to change into a job that required repetitive gripping
> and forceful lifting using his left hand.

Tr. 185.

Dr. Young began treatment of Allison's left hand injury on February 19, 2001, a year

after the surgery. Allison was complaining of swelling, jabbing pain, and numbness. Dr. Young

diagnosed Allison with an aggravation of a previous injury with heavy and/or repetitive work

with the left hand. He suggested hand therapy and approved Allison for modified work only with

the left hand, light and non-repetitive. On March 22, 2001, Dr. Young reported that the therapy

was slowly helping. He kept Allison on the same work restriction.

Page 7 - OPINION AND ORDER

Allison was fully examined by Dr. Bury on March 26, 2004.  Dr. Bury found Allison to be uncooperative and evasive when questioned.  Dr. Bury noted that Allison's "sensation to light touch and pinprick appear to be decreased in a glove-like manner over the left hand from the wrist throughout the hand.  It makes no sense based on the area of his previous sliver and I feel he has more sensation than he demonstrated." Tr. 160.  Dr. Bury concluded that Allison's pain manifestations were exaggerated compared to what Dr. Bury could see in examining Allison's left arm and hand.

The ALJ noted that Dr. Bury questioned whether Allison credibly reported reduced sensation in the hand.  The ALJ stated that evidence from 2000 is not the best evidence of limitations relevant to the period at issue (disability allegedly beginning on June 14, 2002).  Based on that single reason, the ALJ gave greater weight to Dr. Bury's opinion because he examined Allison in March 2004.

Even though the ALJ did not state it clearly, he rejected the opinions of Drs. Young, Smith, Corson, and Rich that Allison needed nonrepetitive work with his left hand.  Although Dr. Bury was aware of Allison's medical history, there is no indication in his report that he had any of Allison's medical records.  Dr. Bury did not address the question of repetitive motion with Allison's left hand.  The single reason for the rejection, that the evidence was older, is not a specific and legitimate reason supported by substantial evidence in the record.  It is one reasonable factor on which the ALJ could rely, but when weighed against the examination by specialists and the fact that Dr. Bury did not have the full medical record of the prior hand surgeries, the age of the specialists' report is not enough to reject it.  This is particularly true because Dr. Bury did not address repetitive motion, which is what was causing symptoms that

sent Allison back to Dr. Young.  I also note that Dr. Young's examination, although not as recent as Dr. Bury's, was in March 2001.  It is also possible that Allison's condition worsened between March 2001 and Bury's examination in March 2004.

I conclude that the ALJ improperly rejected the opinions of Drs. Young, Smith, Corson, and Rich.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

The hypothetical was inadequate for failing to place a limitation on repetitive work with the left hand.  The vocational expert testified that all of the occupations she listed involve repetitive work for both hands and would be precluded if the person could only perform work with the left hand that was light and nonrepetitive.  She was not asked if there were other jobs that fit this limitation.  It is possible that there are other positions available.

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the

evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038

(2000).

    The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the

Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has

the flexibility to remand to allow the ALJ to make further determinations, including

reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in

which it is clear from the record that the claimant is unable to perform gainful employment in the

national economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits

is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

    There is inadequate vocational testimony for me to determine if Allison is disabled.

Consequently, I reverse the decision of the Commissioner and remand for further proceedings.  I

also suggest that another orthopedic examination of Allison's left hand be ordered prior to the

hearing so that the ALJ has the benefit of current information.

**CONCLUSION**

    The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

    IT IS SO ORDERED.

    Dated this _____14th_____ day of March, 2007.


                    _/s/ Garr M. King_____
                    Garr M. King
                    United States District Judge